UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

HOWARD COSBY,                                    :
      Plaintiff,                             :
                                             :
      v.                                     :    Case No. 3:20cv432(MPS)
                                             :
CTU OFFICER MCDONALD, ET AL.,                    :
      Defendants.                            :

**<u>INITIAL REVIEW ORDER</u>**

The plaintiff, Howard Cosby, is currently incarcerated at MacDougall-Walker

Correctional Institution in Suffield, Connecticut ("MacDougall-Walker").  He files this civil

rights action pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12131, *et seq.*, and section 504 of the Rehabilitation Act of 1973 ("RA"),

29 U.S.C. § 794(a), against CTU Officer McDonald, Advanced Practice Registered Nurse Chena

Mcphearson ("Nurse Mcphearson"), Registered Nurse Rose Walker ("Nurse Walker"), and

Registered Nurse Joy ("Nurse Joy").  He asserts claims that the defendants were deliberately

indifferent to his safety and to his need for medical treatment and engaged in retaliatory conduct.

For the reasons set forth below, the Court will dismiss the complaint without prejudice.

I.      **Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints

against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous,

malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary

relief from a defendant who is immune from such relief."  *Id.*  Because the plaintiff is

representing himself, the Court is obligated to "construe" the complaint "liberally and interpret[]

[it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403

(2d Cir. 2013)

(internal quotation marks and citation omitted).

Detailed allegations are not required; rather, under Rule 8(a) of the Federal Rules of Civil

Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A

complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of

a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet

the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

## II.     Factual Allegations

On the morning of February 10, 2020, a correctional officer escorted the plaintiff to the

Admitting and Processing ("A&P") area at MacDougall-Walker to be transported to the

University of Connecticut Health Center ("UCONN") for a medical appointment. *See* Compl.,

ECF No. 1, at 5 ¶ 1. The plaintiff informed an officer in the A&P area and CTU Officer

McDonald that he had discarded his undershirt and boxer shorts because they had become soiled

and requested a new undershirt and pair of boxer shorts. *Id.* ¶¶ 1-2. Both officers refused to

provide the plaintiff with either an undershirt or a pair of boxer shorts to put on under his

jumpsuit. *Id.* ¶ 2. The plaintiff argued with both officers to no avail. *Id.* ¶¶ 2-3. CTU Officer

McDonald became angry and "aggressively" shackled the plaintiff and secured him in his

wheelchair.  *Id.* ¶¶ 3-4.

As he wheeled the plaintiff into the prison van, CTU Officer McDonald placed a plastic bag filled with milk and sandwiches on the plaintiff's lap.  *Id.* at 5-6 ¶¶ 4-5.  The bag was cold and made the plaintiff shiver.  *Id.* at 6 ¶ 5.  When the plaintiff asked CTU Officer McDonald to remove the bag, he noticed that the bag had black grease on the bottom of it which had rubbed off on his jumpsuit.  *Id.*  In response to the plaintiff's request for napkins to clean the grease off his jumpsuit, CTU Officer McDonald "shoved them at [him] aggressively" and "looked at [him] as if he wanted to strike [him.]"  *Id.*  The plaintiff surmised that CTU Officer McDonald was treating him in an hostile manner in retaliation for the argument that had occurred regarding his request for an undershirt and a pair of boxer shorts.  *Id.*  CTU Officer McDonald put the plaintiff in the wheelchair van but failed to properly secure him in the wheelchair before driving off.  *Id.*

Shortly after leaving MacDougall-Walker, CTU Officer McDonald drove too quickly over a speed bump causing the plaintiff to fall forward out of his wheelchair.  *Id.* ¶ 6.  The seatbelt caught the plaintiff under his arms as his "body dangled off the wheelchair on the floor." *Id.*  The plaintiff felt as if his back had been torn in two and screamed in agonizing pain.  *Id.* CTU Officer McDonald heard the plaintiff's screams, stopped the van, and pulled the plaintiff back into his wheelchair.  *Id.*  Instead of reporting the incident to the police or to Department of Correction officials, CTU Officer McDonald got back into the driver's seat and continued the drive to UCONN.  *Id.* at 7 ¶ 7.  During the trip, the plaintiff experienced unbearable pain in his back.  *Id.*

Upon arrival at UCONN, CTU Officer McDonald did not report the incident to medical staff members or the correctional officer who was scheduled to drive the plaintiff back to

3

MacDougall-Walker after his medical appointment.  *Id.*  After checking the plaintiff's vital signs, a nurse escorted him to a room in the emergency department.  *Id. ¶ 8.* The plaintiff informed the physician who came to examine him that he was "hurt pretty bad" and that he needed "back x-rays."  *Id.*  The physician "refused" an x-ray and prescribed the plaintiff a muscle relaxant and two pain medications, including Tramadol, and discharged him to the "D.O.C. Hospital Wing at UCONN."  *Id.*

Later that day, a correctional officer transported the plaintiff back to MacDougall-Walker.  *Id.* at 7-8 ¶¶ 8-9.  Upon his arrival, the plaintiff informed various nurses in the medical department, including Nurse Mcphearson, that he had been involved in a transportation accident on his way to UCONN earlier that day, that he was in pain, and that he needed the pain medications that the physician in the emergency room at UCONN had prescribed for the injury to his back.  *Id.*  at 8 ¶ 9.  The plaintiff explained that he had not undergone x-rays of his back at UCONN but that he believed that x-rays were necessary.  *Id.*  Nurse Mcphearson prescribed Motrin to treat the pain in the plaintiff's back.  *Id.*  Neither Nurse Mcphearson, nor Nurses Walker, nor Nurse Joy would fill the prescriptions for or provide the plaintiff with the pain medications that the emergency room physician had prescribed to him.  *Id.*  The plaintiff also requested that Nurses Mcphearson, Walker, and Joy give him the increased dosage of Lyrica that had been recommended by a physician during his appointment at UCONN.  *Id.*  Nurses Mcphearson, Walker, and Joy stated that they were not required to dispense an increased dosage of Lyrica to him.  *Id.*

Immediately after being seen by Nurses Mcphearson, Walker, and Joy, the plaintiff  filed an inmate request addressed to Nurse Mcphearson stating that he had been involved in a

4

transportation accident on his way to UCONN earlier that day, physicians at UCONN had ordered a muscle relaxant, an increase in the dosage of Lyrica that had been previously prescribed to treat his nerve pain, and physical therapy but had not ordered him to undergo x-rays of his back. *Id.* at 17. He claimed that Nurses Joy and Walker were refusing to provide him with the increased dosage of Lyrica or the muscle relaxant, to send him to physical therapy, or to arrange for him to undergo x-rays of his back. *Id.* The plaintiff informed Nurse Mcphearson that the Motrin that she had prescribed to treat his back pain had not worked for him in the past and would not alleviate the pain caused by the injury that he had suffered to his back during the accident in the van. *Id.*

The plaintiff did not wait to receive a response from Nurse Mcphearson to his inmate request. Instead, on February 12, 2020, he submitted a request to Captain Claudio regarding the injury that he suffered in the transportation van on February 10, 2020. *Id.* at 18. He claimed that neither the physicians at UCONN, nor the nurses at MacDougall-Walker had ordered that he undergo x-rays of his back and that he had notified Nurse Mcphearson on February 10 and 11, 2020, that physicians at UCONN had ordered a pain medication called Tramadol, a muscle relaxant, and an increase in his Lyrica prescription but she had only prescribed Motrin to address his complaints of pain. *Id.*

The plaintiff did not wait to receive a response from Captain Claudio. Instead, on February 16, 2020, he filed two identical grievances describing the incident in the prison van that had occurred on February 10, 2020, his visit to UCONN, his examination by a physician in the emergency room, and the medications prescribed by the examining physician. *Id.* at 13-16, 19-20. The plaintiff explained that neither the examining physician at UCONN, nor the nurses at

MacDougall-Walker had ordered him to undergo x-rays of his back and that Nurse Mcphearson

had only prescribed Motrin to alleviate the pain in his back.  *Id.*  Neither grievance includes the

date on which it was received by a prison official or the administrative remedies coordinator, the

disposition, the date of the disposition, the reason for the disposition, or a signature by a prison

official or medical employee.  *Id.* at 14, 16.  It only includes an X in the box beside the phrase

"You have exhausted DOC's Administrative Remedies."  *Id.*

### III.  Discussion

The plaintiff contends that all defendants retaliated against him in violation of his First

Amendment rights and violated his rights under the ADA and RA; that CTU Officer McDonald

was deliberately indifferent to his safety in violation of the Eighth Amendment; and that Nurse

Mcphearson, Walker, and Joy were deliberately indifferent to his medical needs in violation of

the Eighth Amendment.  *Id.* at 5, 8.  The plaintiff seeks declaratory and injunctive relief and

monetary damages from the defendants in their individual and official capacities.  *Id.* at 9.

### A.  ADA and RA Claims

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132.  Under Section 504 of the RA, "[n]o otherwise qualified individual with a

disability . . . shall, solely by reason of her or his disability, be excluded from the participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity

receiving Federal financial assistance. . . ."  29 U.S.C. § 794(a).  The RA differs from the ADA

in that it applies to entities that "receive federal funding."  *Henrietta D. v. Bloomberg*, 331 F.3d

261, 272 (2d Cir. 2003).

The Second Circuit analyzes claims asserted under Title II of the ADA and Section 504 of the RA under the same standard. *See Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) ("Because the standards under both statutes are generally the same and the subtle distinctions between the statutes are not implicated in this case, 'we treat claims under the two statutes identically.'") (quoting *Henrietta D.*, 331 F.3d at 272). In order to state a claim under either the RA or the ADA, a plaintiff must allege that 1) he is a qualified individual with a disability; 2) the defendant is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or the defendant otherwise discriminated against him, by reason of his disability. *Wright*, 831 F.3d at 2.

The Department of Correction is an entity that is subject to both Acts. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998) (holding the ADA "unmistakably includes State prisons and prisoners within its coverage"); *Wright*, 831 F.3d at 72 ("Both the ADA and the RA undoubtedly apply to state prisons and their prisoners.") (citation omitted). Thus, the second element of both Acts has been met.

The RA and ADA define a disability as "[a] physical or mental impairment that substantially limits one or more major life activities . . . or being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A-C); 29 U.S.C. § 705(20)(B)). The plaintiff does not specifically identify his disability other than indicating that on February 10, 2012 he was using a wheelchair. He also alleges that he suffered a painful injury to his back when he was dislodged from his wheelchair on the trip to UCONN. The Court will assume that the plaintiff either suffered from a painful injury to his back or was confined to a wheelchair due to a disabling

7

condition that substantially limited one or more of his major life activities.  Thus, the plaintiff

has met the disability element of both the RA and ADA

There are no allegations to suggest that the defendants treated the plaintiff adversely

because of a disabling condition or denied him an opportunity to participate in or benefit from

services, programs, or activities because of a disabling condition.  Rather, his claim is that CTU

Officer McDonald endangered his safety by driving too fast and failing to take the necessary

steps to determine whether he had been injured after he had been dislodged from his wheelchair

and that Nurses Joy, Walker, and Mcphearson failed to provide him with adequate medical

treatment for the injury that he suffered to his back during the van incident.  Thus, the plaintiff's

allegations address the inadequacy of treatment or care provided by the defendants for his painful

injury and the inadequacy of the care taken to ensure his safety during the van trip rather than

discriminatory action motivated by his back injury or other disabling condition that required the

use of a wheelchair.  *See Schnauder v. Gibens*, 679 F. App'x 8, 11 (2d Cir. 2017) (summary

order) (affirming the dismissal of a plaintiff's ADA/Rehabilitation Act claim because inmate's

disability – a breathing difficulty caused by a broken nose - "was not the reason he was unable to

access medical services; rather, it was the reason he sought such services," so "he ha[d] not

pleaded facts showing that denial of treatment was attributable to bias based on disability"

(citation omitted)); *Reese v. Breton*, No. 3:18-CV-1465 (VAB), 2020 WL 998732, at *5 (D.

Conn. Mar. 2, 2020) ("Neither the ADA nor the RA, however, applies to claims regarding the

adequacy or substance of services provided by correctional departments or provides a remedy for

medical malpractice.") (citations omitted); *Gonzalez v. Maurer*, No. 3:17-CV-01494 (JAM),

2017 WL 4531685, at *3 (D. Conn. Oct. 10, 2017) (dismissing prisoner's ADA and RA claims

based on denial of eye care, because the prisoner's "complaint is that he has not received treatment for his vision, not that any vision disability prompted any of the defendants to discriminate against or disadvantage him").

The plaintiff has failed to allege a plausible claim for relief under the ADA or the RA. The ADA and the RA claims asserted against the defendants are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### B.        Section 1983 - Eleventh Amendment - Damages and Declaratory Relief

The plaintiff seeks punitive and compensatory damages from the defendants in their individual and official capacities.  To the extent that the plaintiff seeks monetary relief for violations of his federal constitutional rights by the defendants in their official capacities, the request is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).  Accordingly, the requests for compensatory and punitive damages from the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

The plaintiff seeks a declaratory judgment that the defendants violated his federal constitutional rights.  Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may seek prospective injunctive and declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future.  *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000). The request for a declaration that the defendants violated his First and Eighth Amendment rights

in the past is barred by the Eleventh Amendment.  *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young*... to claims for retrospective relief") (citations omitted).  Furthermore, if the plaintiff was to prevail on his First Amendment claim or his Eighth Amendment claim, the Court necessarily would determine that the defendants had violated his constitutional rights.  Thus, a separate award of declaratory relief is unnecessary.  Accordingly, the request for a declaratory judgment is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## C.    Section 1983 - First Amendment - Retaliation

The plaintiff alleges that CTU Officer McDonald behaved in a hostile manner towards him during his placement in the transport van prior to leaving on the trip to UCONN.  He assumes that this hostile behavior constituted retaliation for the argument that had occurred between him and CTU Officer McDonald regarding his request for a new undershirt and a pair of boxer shorts.  Compl. at 6 ¶ 5.  The plaintiff generally asserts that Nurses Joy, Walker, and Mcphearson "acted in retaliation to [his] complaints" described in the complaint and for "current litigations." *Id.* at 7 ¶ 8.

The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotation marks and citation omitted).  Consequently, a

10

plausible retaliation claim must be "supported by specific and detailed factual allegations." *Id.*

To state a cognizable First Amendment retaliation claim, plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Id.* at 294.  The adverse action must have been sufficiently serious that it "would deter a similarly situated [prisoner] of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Dawes v. Walker,* 239 F.3d 489, 493 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

### 1.     Nurses Mcphearson, Joy, and Walker

There is no doubt that the filing of lawsuits and administrative grievances is constitutionally protected activity.  *See Espinal v. Goord*, 558 F.3d 119, 128–29 (2d Cir. 2009) (filing of lawsuit); *Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003) (filing of prison grievance).  The allegations that Nurses Joy, Walker, and Mcphearson retaliated against him for making complaints and for filing lawsuits in the past, however, are not supported by any facts.

The plaintiff claims that he filed two requests and two grievances *after* Nurses Joy, Walker, and Mcphearson refused to fill the prescriptions for or provide him with the medications that a physician had prescribed at UCONN.  The plaintiff does not allege that Nurses Joy, Walker, or Mcphearson engaged in any adverse action or failed to take any action after he filed his grievances or that they were even aware that he had filed the requests or grievances.  The plaintiff mentions "current litigations" but does not allege that either Nurse Joy or Nurse Walker or Nurse Mcphearson was a defendant in any other lawsuit that he filed in federal or state court.

Nor does he allege that they were aware of his prior lawsuits.  A review of the ten other federal

cases filed by the plaintiff prior to the alleged retaliatory conduct of Nurses Joy, Walker and

Mcphearson reflects that no defendant in this action is also a defendant in any of the complaints

filed in the other cases.  Thus, the plaintiff has not asserted a plausible causal connection

between the inmate requests and grievances that he filed after his visit to UCONN on February

10, 2020 seeking medical treatment and any actions by Nurse Joy, or Nurse Walker, or Nurse

Mcphearson.  The conclusory claims of retaliation asserted against these defendants are

dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## 2.     CTU Officer McDonald

Although some district courts "have found that verbal complaints may be protected for

the purposes of a First Amendment retaliation claim, the Second Circuit has yet to articulate a

bright line rule regarding constitutionally protected oral speech by an inmate." *Booker v. Griffin*,

No. 16-CV-00072 (NSR), 2018 WL 1614346, at *17 (S.D.N.Y. Mar. 31, 2018) (citations

omitted).  Even if verbal complaints/grievances constituted protected speech, district courts have

distinguished between verbal grievances and verbal confrontations or arguments between a

prisoner and a correctional officer and have concluded that the latter do not constitute protected

speech.  *See, e.g.*, *McIntosh v. United States*, No. 14-CV-7889 (KMK), 2016 WL 1274585, at

*26–27 (S.D.N.Y. Mar. 31, 2016) (observing that "courts in the Second Circuit and others have

distinguished between unambiguously protected activity and situations where an inmate verbally

confronts a prison official.") (citing, *inter alia*, *Young v. Ice*, No. 14-CV-1475, 2015 WL 471675,

at *3 (N.D. Ohio Feb. 4, 2015) ("While prisoners have a clear right protected by the First

Amendment to file formal grievances against prison officials, arguing with corrections officers,

or being insolent or disrespectful toward corrections officers is not conduct protected by the First Amendment." (citation omitted)); *Martin v. Hurley*, No. 14-CV-66, 2014 WL 7157336, at \*2 (E.D. Mo. Dec. 15, 2014) ("Prisoners have no constitutionally protected right to confront staff and discuss issues with them, particularly when ordered not to do so."); *Rossi v. Goord*, No. 00-CV-1521, 2006 WL 2811505, at \*10 n.16 (N.D.N.Y. Sept. 28, 2006) ("The questioning by an inmate of a lawful order given by a corrections officer, however, does not constitute protected speech deserving of First Amendment protection.") (citing *Rodriguez,* 66 F.3d at 478–79), *reconsideration granted in part on other grounds*, 2007 WL 952051 (N.D.N.Y. Mar. 29, 2007); *Garrido v. Coughlin*, 716 F. Supp. 98, 101 (S.D.N.Y. 1989) ("While there is a claim of retaliation here ..., it was not for exercise of [the plaintiff's] First Amendment rights; rather, the alleged retaliation arose out of a verbal confrontation.")).

The facts do not suggest that the plaintiff's verbal argument with CTU Officer McDonald in connection with his request for a new pair of boxer shorts and an undershirt constituted the exercise of protected speech. *See Carl v. Griffin*, No. 08-CV-4981 (RMB/MHD), 2011 WL 723553, at \*5 (S.D.N.Y. Mar. 2, 2011) ("Plaintiff's brief and isolated verbal encounter with Griffin does not constitute protected First Amendment speech.  To construe it as such would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment.") (internal quotation marks, brackets and citation omitted). Thus, the plaintiff has not met the first element of a retaliation claim.  Nor do the facts suggest that the alleged hostile treatment of the plaintiff by CTU Officer McDonald, including menacing glares and the application of restraints in an "aggressive" manner, would have deterred a reasonable prisoner from the exercise of his or her constitutional rights.  The First Amendment

13

retaliation claim asserted against CTU Officer McDonald is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### D.       Section 1983 - **Eighth Amendment** - **Deliberate Indifference to Medical Needs**

The Eighth Amendment prohibits "deliberate indifference to an inmate's serious medical needs."  *Estelle v Gamble*, 429 U.S. 97, 104 (1976).  An inmate must meet two elements to state a claim that a prison official or medical provider was deliberately indifferent to his medical needs.  The objective element requires the inmate to assert facts to demonstrate that his medical need or condition is serious.  *Hill v. Curcione*, 657 F.3d 116, 122–23 (2d Cir. 2011) (a serious medical need contemplates "a condition of urgency" such as "one that may produce death, degeneration, or extreme pain") (internal quotation marks and citation omitted).  In determining whether a condition is serious, the Court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

The second element is subjective.  To meet this element, the inmate must allege that the prison official or medical provider was actually aware that his actions or inactions would cause a substantial risk of serious harm.  *See Hill*, 657 F.3d at 122 (citation omitted).  Mere negligent conduct, however, does not constitute deliberate indifference.  *See id.* at 123 ("'a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'") (quoting *Estelle*, 429 U.S. at 106).

### 1.       **Back Pain Due to Van Incident**

14

The plaintiff alleges that he suffered an injury to his back when he was dislodged from his wheelchair during the ride to UCONN.  After his arrival at UCONN, the physician who examined the plaintiff in the emergency room, prescribed a muscle relaxant and pain medications but concluded that x-rays of the plaintiff's back were not necessary to treat his symptoms.  The plaintiff does not indicate that the physician diagnosed him as suffering from any particular condition or injury.  Upon his return to MacDougall-Walker later that same day, the plaintiff claims to have informed Nurses Joy, Walker, and Mcphearson that he was suffering from "tremendous back pain" due to the van incident.  The facts as alleged do not permit the Court to determine whether the plaintiff suffered from a serious medical condition as a result of the incident in the transport van.  Even if the Court were to assume that the plaintiff suffered from a serious medical condition, he has not asserted facts from which it can be inferred that Nurses Joy, Walker, or Mcphearson were deliberately indifferent to that medical condition.

The plaintiff claims that upon his return to MacDougall-Walker on February 10, 2020, he requested that he be sent to have his back x-rayed, but Nurses Mcphearson, Joy, and Walker denied his request.  It is well settled that a difference of opinion between an inmate and medical provider regarding the appropriate form or type of treatment or testing does not constitute evidence of deliberate indifference.  *See Bolden v. Cty. of Sullivan*, 523 F. App'x 832, 833 (2d Cir. 2013) ("Indeed, we have held that a disagreement with the type of medical care provided is insufficient to state a constitutional claim; 'the essential test is one of medical necessity and not one simply of desirability.'") (quoting *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)); *Hill*, 657 F.3d at 123 ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment.") (citation omitted); *Chance,* 143

15

F.3d at 703 (It is well-established that mere disagreement over the proper treatment does not

create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner

might prefer a different treatment does not give rise to an Eighth Amendment claim.") (citation

omitted).

The plaintiff concedes that the physician who had examined him in the emergency room

at UCONN did not think x-rays of his back were necessary.  The plaintiff asserts no facts to

suggest that his condition changed between the time that the physician examined him at UCONN

and his return to MacDougall-Walker later that same day.  The fact that neither Nurse

Mcphearson, nor Nurse Joy, nor Nurse Walker entered an order or sought authorization from a

physician to enter an order that the plaintiff undergo spinal x-rays, despite the plaintiff's belief

that his condition required x-rays, does not state a plausible claim of deliberate indifference to

the plaintiff's medical needs.  *See e.g.*, *Estelle*, 429 U.S. at 107 ("[T]he question whether an X-

ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of

a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does

not represent cruel and unusual punishment. At most it is medical malpractice, and as such the

proper forum is the state court. . . ."); *Beaver v. Dippert*, No. 917CV550MADDEP, 2017 WL

3917037, at *3 (N.D.N.Y. Sept. 6, 2017) ("A professional decision not to administer a specific

medical test, regardless of a prisoner's disagreement, is an example of the type of medical

judgment that is given judicial deference.").  The claim that Nurses Mcphearson, Joy, and

Walker violated the plaintiff's Eighth Amendment rights when they denied his request to arrange

for him to undergo x-rays of his back is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

The plaintiff alleges that in addition to denying his request that he undergo x-rays of his

back, Nurses Mcphearson, Joy, and Walker refused to provide him with the pain medications

that a physician in the emergency room at UCONN had prescribed to him.  There are no

allegations that Nurse Mcphearson or Nurse Joy or Nurse Walker ignored his complaints of back

pain or refused to prescribe medication to alleviate the pain that had allegedly been caused by his

partial fall from his wheelchair during the trip to UCONN.  Rather, after the plaintiff returned

from UCONN, Nurse Mcphearson prescribed a different medication to treat his back pain than

had been prescribed by the physician at UCONN.  The plaintiff prematurely concluded that the

medication prescribed by Mcphearson would not be effective in treating his painful condition

simply because it had not been effective in alleviating a painful condition that he had suffered at

a prior time.

   These allegations do not state a plausible claim of deliberate indifference by Nurses

Mcphearson, Joy, or Walker to the pain experienced by the plaintiff's after his partial fall from

his wheelchair during the trip to UCONN.  *See e.g.*, *Rush v. Fischer*, 09 Civ. 9918 (JGK), 2011

WL 6747392, at *3 (S.D.N.Y. Dec. 23, 2011) ("The decision to prescribe one form of pain

medication in place of another does not constitute deliberate indifference to a prisoner's serious

medical needs.") (*citing, inter alia*, *Veloz v. New York,* 339 F.Supp.2d 505, 525 (S.D.N.Y. 2004)

(medical providers' decision not to prescribe stronger pain medication than Tylenol to address

prisoner's back condition did not state a claim for deliberate indifference); *Ortiz v. Makram,* No.

96 Civ. 3285, 2000 WL 1876667, at *9–10 (S.D.N.Y. Dec. 21, 2000) (doctor's decision to

prescribe Motrin in lieu of Percocet for prisoner's medical condition did not amount to deliberate

indifference, even when that decision contravened recommendation of specialist)).  The Eighth

Amendment claim that Nurses Joy, Walker, and Mcphearson were deliberately indifferent to the

plaintiff's painful back injury because they decided to treat the injury with a different medication than had been prescribed by a physician at UCONN is dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).

### 2.    Nerve Pain

The plaintiff asserts that on February 10, 2020, he had a scheduled medical appointment at UCONN for an undisclosed medical condition.  The plaintiff also alludes to a recommendation made by a physician, other than the physician who examined him in the emergency room that day, for an increase in the dosage of a medication called Lyrica, that had been prescribed to him on a prior occasion for chronic nerve pain.  The plaintiff does not indicate how long he had suffered from nerve pain prior to February 10, 2020 or how the pain affected his daily activities.

Even if the court were to assume that the plaintiff suffered from a serious medical condition – chronic nerve pain - as of February 10, 2020, he has not asserted facts from which it can be inferred that Nurses Joy, Walker, or Mcphearson were deliberately indifferent to that medical condition.  The plaintiff does not allege that Mcphearson, Joy, or Walker discontinued or refused to provide the dosage of Lyrica that had been prescribed to him for nerve pain prior to his February 10, 2020 appointment at UCONN.  Rather, he claims that these defendants refused to immediately dispense the increase in dosage of Lyrica that had been recommended by a physician at UCONN.

The inmate request that the plaintiff submitted to Nurse Mcphearson on or after February 10, 2020 does not mention that he had not received the increase in the dosage of his Lyrica prescription.  *See* Compl. at 17.  Nor does the plaintiff allege that the recommendation of the UCONN physician had been entered in his medical records at MacDougall-Walker.  Although

18

the plaintiff attaches a copy of a medical grievance that he allegedly filed on February 16, 2020,

the grievance only makes a passing reference to the prior refusal by Nurses Mcphearson, Joy,

and Walker to dispense the increased dosage of Lyrica to him.  *See id.* at 15-16, 19.  The section

of the grievance marked as DECISION includes no date of receipt, no disposition date, no

signature, no disposition, and no explanation indicating the basis for any disposition of the

grievance.  *See id.* at 16.  Thus, no medical provider or administrator issued an order directing

Mcphearson, Joy, or Walker to provide the plaintiff with the increased dosage of Lyrica that had

allegedly been recommended by a physician at UCONN on February 10, 2020.  Nor does the

plaintiff assert that after February 16, 2020, he submitted any additional requests to Mcphearson,

Joy, or Walker or other medical providers at MacDougall-Walker to dispense the recommended

increase in the dosage of Lyrica to him.

The plaintiff has not stated a plausible claim that the alleged refusal of Nurses

Mcphearson, Joy, and Walker to immediately dispense an increased dosage of Lyrica to him,

after learning from him that a physician at UCONN had recommended an increase, constituted

deliberate indifference to a serious risk of harm to his health or a serious medical condition in

violation of the Eighth Amendment.  This Eighth Amendment claim is dismissed.  *See* 28 U.S.C.

§ 1915A(b)(1).

### E.     Section 1983 – Eighth Amendment – Deliberate Indifference Safety

The plaintiff alleges that prior to leaving MacDougall-Walker on February 10, 2020,

CTU Officer McDonald neglected to properly apply the seatbelt in order to prevent him from

falling from his wheelchair during the trip to UCONN.  When Officer McDonald hit a speed

bump, the plaintiff was dislodged from his wheelchair but did not fall to the floor of the van

because he was caught under his armpits by the seatbelt.  Officer McDonald stopped the van, pulled the plaintiff back into his wheelchair, and then continued to drive on to UCONN.  He did not seek medical assistance or notify prison officials at MacDougall about the incident.

Prison conditions that "involve the wanton and unnecessary infliction of pain" constitute cruel and unusual punishment under "the Eighth Amendment, which is applicable to the States through the Fourteenth Amendment."  *Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981) (internal quotation marks and citation omitted).  Conditions of confinement that are merely "restrictive or even harsh," however, do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society."  *Id.* at 347.

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate is required to demonstrate an objective and a subjective element.  To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[ ]" or posed "a substantial risk of serious harm" to his health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347.  The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise.  *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348.

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the defendants knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action.  *See Farmer*, 511 U.S. at 834, 837.

20

Thus, the defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837. An allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that the defendants acted with the mental state equivalent to "subjective recklessness" as that term is used in "criminal law." *Id.* at 840-41.

The claim that Officer McDonald did not properly apply the seatbelt to secure the plaintiff in the wheelchair prior to leaving MacDougall-Walker constitutes negligence, at most. Such a claim is not cognizable in a section 1983 action. *Id.* at 835. This claim of negligence fails to state a plausible claim under the Eighth Amendment and is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

The plaintiff alleges that CTU Officer McDonald heard him "scream[] in agonizing pain" as he was partially thrown from the wheelchair and stopped the van to check on him. Although the plaintiff requested immediate assessment of his injuries and treatment by medical providers, Officer McDonald pulled the plaintiff back into the wheelchair and drove the van to UCONN.

These allegations that CTU Officer McDonald decided to continue the trip to UCONN rather than to turn back to Walker-MacDougall and/or to summon medical staff members from MacDougall-Walker to assess and/or treat the plaintiff constituted negligent conduct, at most. *See Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). The plaintiff concedes that shortly after the incident in the van he arrived at UCONN, a nurse and a physician examined him in response to his complaints about pain and/or injuries that he may have sustained to his back due to being

dislodged from his wheelchair, and the examining physician prescribed a muscle relaxant and pain medications to alleviate his symptoms.  The Court concludes that the plaintiff has not stated a plausible claim that CTU Officer McDonald was deliberately indifferent to a serious risk of harm to his safety or health either prior to or during the trip to UCONN on February 10, 2020. The Eighth Amendment claim of deliberate indifference to safety/health asserted against Officer McDonald is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

(1)      The claims asserted under the ADA and RA, the First Amendment retaliation claims asserted against all defendants, the Eighth Amendment deliberate indifference to medical needs claim asserted against Nurse Mcphearson, Nurse Joy, and Nurse Walker, and the Eighth Amendment deliberate indifference to health and safety claim asserted against CTU Officer McDonald are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  The Court declines to exercise supplemental jurisdiction over any state law claims that may have been asserted by the plaintiff.  *See* 28 U.S.C. § 1367.

The Court cannot rule out the possibility that the plaintiff could allege additional facts to state a claim that Nurse Mcphearson, Nurse Joy, and Nurse Walker were deliberately indifferent to his chronic nerve pain by refusing to provide him with the increased dosage of Lyrica pursuant to a recommendation made by a physician at UCONN on February 10, 2020.  Accordingly, the Court will permit the plaintiff **until September 15, 2020**, to file an amended complaint, together with a motion to reopen, to reassert and supplement only this Eighth Amendment claim.  If the plaintiff chooses to file an amended complaint, it should include facts indicating the reason for

22

his appointment at UCONN on February 10, 2020, why a medical provider had previously

prescribed Lyrica to him, whether he made additional requests for the increased dosage of Lyrica

to any medical provider after February 10, 2020, either verbally or in writing, when he made any

additional requests, and the type of response or responses he received to the additional requests.

The plaintiff should also include a description of the nature and severity of his nerve pain and

whether it affects the performance of his daily activities.

      (2)     The Court is instructed to close this case.  Should the plaintiff file an amended

complaint, together with a motion to reopen, by **September 15, 2020**, the Court will review the

amended complaint to decide whether it states a cognizable claim and will then decide whether

to reopen the case.  Should the plaintiff fail to do so, the case will be dismissed with prejudice

without further order of the Court.

      SO ORDERED at Hartford, Connecticut this 25th day of August, 2020.

             __/s/_____

             Michael P. Shea
             United States District Judge